IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARK A. NEAL                                                          PLAINTIFF

v.                  Civil No. 12-3044

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Mark Neal, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

The Plaintiff filed his applications for DIB and SSI in January 2010[1], alleging an onset date of April 28, 2006, due to back, neck, knee, and bilateral shoulder pain; depression; anxiety; somatoform disorder; and, personality disorder. Tr. 10, 188, 195-198, 262-263, 296-297. His claims were denied both initially and upon reconsideration. Tr. 97-144. An administrative

---

[1] Plaintiff has previously applied for benefits. Tr. 105-116, 206, 221-224. In particular, Plaintiff applied for Title II and Title XVI benefits in October 2003, alleging disability since September 2002. Tr. 206, 221-224. These applications were denied at the initial level in 2004. Tr. 206, 224. An ALJ issued an unfavorable decision on April 27, 2006, denying Plaintiff's October 2003 applications. Tr. 101-116, 222. The Appeals Council denied Plaintiff's request for review in September 2006. Tr. 120, 126, 222. The April 27, 2006, ALJ decision became administratively final when the U.S. District Court for the Western District of Arkansas issued an order dismissing Plaintiff's 2006 Compliant because it was untimely. Tr. 119-123.

hearing was then held on March 9, 2011.  Tr. 39-96.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 52 years of age and possessed a high school education.  Tr. 45.  He had past relevant work ("PRW") experience as a glazier, furniture assembler, four-wheeler/motorcycle assembler, stocker, and salesman.  Tr. 45-54, 87-89, 230, 238, 254-261.

On July 27, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's osteoarthritis/degenerative disk disease of the cervical, thoracic, and lumbar spine; mild scoliosis of the thoracic spine; history of mild to moderate occlusive disease of the right and left anterior tibial arteries; history of left knee surgery; history of multiple hernia surgeries; adjustment disorder with anxiety and depression; depressive disorder not otherwise specified; personality disorder; and alcohol dependence/abuse in partial remission did not meet or equal any Appendix 1 listing.  Tr. 12.  The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light work except he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and never climb ladders, ropes, or scaffold, perform overhead work, or work around hazards (including driving as a part of work). Further, the ALJ concluded Plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote with few variables and use of little judgment, and the supervision required was simple, direct, and concrete.  Tr. 14.  With the assistance of a vocational expert, the ALJ then found that Plaintiff could perform work as a production worker/bench assembler and maid/housekeeper/laundry worker.  Tr. 21.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 14, 2012. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 12.

## II.   Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff raises three issues on appeal: 1) it is unclear from the opinion whether the ALJ properly considered application of a higher age category; 2) the ALJ failed to provide specific substantial reasons for finding Plaintiff not credible; and 3) the ALJ improperly concluded that Plaintiff could perform a range of light work. Although not raised by the Plaintiff, we also find the relevant time period to be an issue in this case. As such, we will discuss this issue prior to addressing the issues raised in the Plaintiff's brief.

4

### A. Relevant Time Period:

Plaintiff has alleged an onset date of April 28, 2006. We note that Plaintiff was incarcerated from February 2006 until December 2009 for sexual abuse of a minor. As such, even if he were found to be disabled during this time period, Plaintiff would not be entitled to receive benefits. *See* U.S. C. § 402 (x)(1) (A)(i) (1993) (amended 1994) (holding that benefits are not payable to any "individual for any month ending with or during or beginning with or during a period of more than 30 days throughout all of which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of a criminal offense"). Accordingly, the relevant time period for this case is January 2010 until July 27, 2011, the date of the ALJ's decision.

### B. Age Category and Medical Vocational Grids:

Plaintiff contends that remand is necessary because it is unclear whether the ALJ considered the proper age category when determining Plaintiff's disability. Plaintiff was born on August 7, 1958, making him 47 years old on his alleged onset date. As such, he was initially placed in the younger individual category (ages 18-49). *See* 20. C. F. R. 404.1563 and 416.963. However, during the relevant time period, he turned 50, placing him in the closely approaching advanced age category. *Id.* Plaintiff contends that it is not clear whether the ALJ considered this prior to rendering his decision. We disagree. In finding 7, the ALJ specifically noted that Plaintiff's age category had changed to that of an individual closely approaching advanced age. Tr. 20. Further, in his RFC analysis, the ALJ also noted that Plaintiff was now 52 years old. Tr. 15.

5

We also note that the ALJ did not rely on the guidelines in determining Plaintiff's disability. Due to non-exertional limitations, he correctly relied on the testimony of a vocational expert. And, based on Plaintiff's age, education, work experience, and RFC, it was determined that he could perform work that exists in significant numbers in the national economy. Accordingly, it is clear to the undersigned that the ALJ properly considered Plaintiff's transition from the younger individual category to the closely approaching advanced age category.

### C.   Credibility:

Plaintiff also takes issue with the ALJ's credibility determination, arguing that he failed to provide substantial reasons for his decision. In assessing the credibility of Plaintiff's subjective complaints, the ALJ was required to consider all of the evidence relating to Plaintiff's subject complaints, including evidence presented by third parties that relates to: 1) Plaintiff's daily activities; 2) the duration, frequency, and intensity of his pain; 3) precipitation and aggravating factors; 4) dosage, effectiveness, and side effects of his medication; and, 5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While the ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them, he may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Contrary to the Plaintiff's argument, the ALJ discussed several factors that weighed against Plaintiff's credibility. He properly concluded that Plaintiff's credibility was damaged by his criminal record and by his prior use of illegal substances. Tr. 18. *See Simmons v. Massanari*,

6

264 F.3d 751, 756 (8th Cir. 2001)(upholding negative credibility finding based on conflicting statements and forgery conviction); *see also* FEDERAL RULE OF EVIDENCE 609 (Impeachment by evidence of conviction of a crime). Likewise, the ALJ found that Plaintiff's lack of consistent treatment for his alleged impairments and use of over the counter medications to treat his pain undermined his credibility. *See* 20 C.F.R. § 404.1529(3)(iv) (Use of nonprescription medication is a relevant consideration when evaluating subjective complaints); *see also Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Plaintiff contends that his failure to seek out consistent treatment and use of over-the-counter medications is justified because he did not have the funds to pay for medical services or medication. However, a review of the evidence reveals that Plaintiff was able to afford cigarettes and alcohol, in spite of his lack of financial resources. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999). (holding fact that Plaintiff continued to smoke undermine his argument that he could not afford medication). And, we can find no indication in the record that Plaintiff was denied medical services or medication due to his financial status. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the Plaintiff was ever denied medical treatment due to financial reasons). Instead, the record makes clear that he was aware of the services offered by the Mountain Home Christian Clinic, availing himself of those services on only four occasions after being released from prison. Tr. 924, 1046-1048. The record is also void of any professional mental health treatment, suggesting to the undersigned that Plaintiff's impairments were not as severe as alleged. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding lack of formal treatment by a psychiatrist,

7

psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

We also take issue with the Plaintiff's contention that his daily activities support his allegation of disability. On adult function reports completed on January 26, 2010, and June 30, 2010, Plaintiff reported the ability to care for his personal hygiene, prepare simple meals daily, clean house, sweep, vacuum, drive a car, go out alone, shop in stores for groceries and necessities (including Wal-Mart), pay bills, count change, handle a savings account, use a checkbook/money orders, read, watch television, attend medical appointments, and meet with his parole officer. Tr. 264-271, 298-305. Further, his mother indicated that he attended stock car races and enjoyed visits with his children. Tr. 286-295. And, on a questionnaire dated February 23, 2011, Plaintiff stated that he watches television, listens to the radio, reads, sleeps, grooms himself, and visits with his mom daily; drives, cooks, cleans house, talks on the phone, participates in organizations, and talks to neighbors weekly; and, washes dishes, dusts, vacuums, does laundry, makes the bed, fixes things, grocery shops, handles finances, and goes out to eat or to the movies monthly. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform

housework with some help from a neighbor). Therefore, it does not appear to the undersigned that Plaintiff's reported daily activities support his disability claim.

Accordingly, we find that the ALJ properly considered the evidence concerning Plaintiff's subjective complaints and discredited him for valid reasons.

  D.  **RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

As previously noted, Plaintiff was incarcerated on his alleged onset date. There are approximately 498 pages of medical records documenting Plaintiff's treatment while incarcerated. Tr. 422-920. He was treated for chronic pain, shoulder bursitis, migraines, back pain, arthritis, osteoarthritis, reflex sympathetic dystrophy of the right shoulder and upper extremity, knee pain, hypertension, hernia repairs, depression, anxiety, personality disorder, and alcohol and cannabis abuse. Tr. 463, 485-490, 506-508, 572-579, 734-737, 793-802, 847-873, 877-895. His medications included Methadone, Vioxx, Ultracet, Nexium, Tenormin, Atenolol, Metoprolol, Niacin, Gemfibrozil, Enalapril, Nefedical XL, Zantac, Prilosec, Reglan, Baclofen, Celexa, Simvastatin, and over-the-counter medications prescribed at varying times during his incarceration. And, while records denote prison imposed work restrictions including no prolonged crawling, stooping, running, jumping, walking, or standing, and no assignments requiring strenuous physical activity for more than four hours, records also reveal that Plaintiff worked in the landscape department at the prison two days per week pushing a lawn mower for a couple of hours. Tr. 18, 462. As late as December 2009, physical exams revealed a normal gait. Tr. 462.

On January 4, 2010, Plaintiff was treated at the Mountain Home Christian Clinic ("MHCC"). Tr. 924. Treatment notes indicate that he had recently been released from prison and needed medication. Plaintiff complained of significant depression with crying spells and sadness, peptic disease and reflux, and chronic pain. The doctor diagnosed him with a herniated disk and depression and prescribed Acetaminophen, Effexor, and Nexium. Tr. 1045.

On March 26, 2010, Dr. Nancy Bunting conducted a consultative mental status examination and evaluation of adaptive functioning on behalf of the Commissioner. Tr. 930-

10

934. Plaintiff reported a 15 year history of depression and anxiety. He stated that his anxiety interfered with his daily life, making him reluctant to go anywhere. And, Plaintiff described daily crying spells which he felt was due to the absence of medication. Additionally, he endorsed panic attack symptoms consisting of sweatiness, shakiness, nausea, and rapid breathing. However, Plaintiff also admitted to having drank a pint of whiskey the previous weekend, stating he drank twice per week, and admitted to having used marijuana, cocaine, LSD, methamphetamine, mushrooms, quaaludes, white crosses, yellow jackets, peyote, and black mollies prior to 2005. Tr. 931. Dr. Bunting noted that Plaintiff was cooperative, alert, and attentive with an anxious mood, an affect appropriate in its range and level of expression, normal speech, and logical, relevant, and organized thoughts. Tr. 931-32. She diagnosed him with alcohol dependence and an adjustment disorder with anxiety and depression, and assessed a global assessment of functioning ("GAF") score of 48-58. Tr. 933. Dr. Bunting opined that Plaintiff had "some" ability to deal with co-workers and supervisors and "little" ability to deal with the public and work stress or changes, but indicated this could improve as he readjusted to life in the civilian population. Tr. 933. He maintained the ability to attend and sustain concentration on basic tasks, sustain in completing tasks for at least short periods of time, persist during the interview, and complete work-like tasks within an acceptable timeframe. Tr. 933-34.

On March 29, 2010, Dr. Shannon Brownfield performed a consultative physical examination. Tr. 935-940. Plaintiff alleged problems with chronic right shoulder, neck, low back pain, and bilateral knee pain, worse on the left following two failed surgeries, and depression. On physical examination, the right shoulder and knees were both limited in range of motion with associated pain. Tr. 937. Although the left shoulder had a full range of motion,

11

Dr. Brownfield noted that motions of that joint produced pain as well. He also had a limited and painful range of motion in the cervical and lumbar spine with scoliosis observed in the thoracic spine. Further, muscle spasms were present in Plaintiff's right shoulder. Tr. 938. And, Plaintiff's gait was "mildly stooping." X-rays showed moderate osteoarthritis of the lumbar spine with moderate degenerative disc disease of the neck. Tr. 939. Dr. Brownfield diagnosed Plaintiff with neck pain, right shoulder pain, moderate to severe osteoarthritis and degenerative disc disease of the thoracic spine, low back pain due to moderate osteoarthritis and degenerative disc disease of the lumbar spine, poorly controlled depression and anxiety, and left knee pain due to moderate osteoarthritis. He then assessed Plaintiff with moderate to severe limitations of the right arm, moderate limitations in maintaining prolonged positions, stooping, kneeling, and lifting, and globally moderate to severe limitations due to depression and anxiety. Tr. 939.

On May 3, 2010, Dr. Julius Petty, a non-examining, consultative physician completed a physical RFC assessment. Tr. 946 -953. After reviewing only Plaintiff's medical records, he concluded Plaintiff could perform a full range of light work. This assessment was affirmed by Dr. Bill Payne August 8, 2010. Tr. 964.

On May 3, 2010, Dr. Jon Etienne Mourot, a non-examining consultative psychologist, completed a mental RFC assessment. Tr. 954-955. He reviewed Plaintiff's medical records noting that Plaintiff had complained of depression and anxiety, but reported no significant impairment of adaptive functioning with activities of daily living and no history of formal mental health treatment. Dr. Mourot also noted Plaintiff's diagnoses of alcohol dependence and adjustment disorder, and concluded his mental impairments were not severe. This was affirmed by Dr. Paula Lynch on August 6, 2010. Tr. 961.

12

On August 5, 2010, seven months after his first appointment, Plaintiff returned to MHCC, again seeking medication refills. Tr. 1048. His depression persisted, and the doctor indicated that he would consider changing his medications. Plaintiff's Effexor dosage was increased and Buspar was added. Allegra was also prescribed.

On September 2, 2010, Dr. Vann Smith conducted a second neuropsychological evaluation of Plaintiff.[2] Tr. 965-968. Dr. Vann Smith's neuropsychological evaluation. Administered Halstead-Reitan neuropsychodiagnostic test battery, concluding that Plaintiff's performance was consistent with the presence of "diffuse abnormal brain function of moderate severity and slowly progressive velocity." Tr. 967. Dr. Smith also reported a generalized worsening of symptoms since Plaintiff's first assessment in 2005. He diagnosed Plaintiff with cognitive disorder, non-psychotic, secondary to general medical conditions . Tr. 968. Dr. Smith stated that Plaintiff's pattern of test results was consistent with the nervous system's adaptive response to chronic pain. He then completed a mental RFC form. Tr. 969-973. In the abilities and aptitudes needed for unskilled work, Dr. Smith found Plaintff unable to meet competitive standards in remembering work-like procedures, maintaining attention for two hour segments, maintaining regular attendance and punctuality within customary, usually strict tolerances, sustaining an ordinary routine without supervision, completing a normal workday or workweek without disruption from psychologically based symptoms, and in performing at a consistent pace without an unreasonable number and length of rest periods. Tr. 971. In the abilities and aptitudes

---

[2]On June 1, 2005. Dr. Smith conducted his first examination of Plaintiff, in connection with a prior application for benefits. Tr. 974-977. He ultimately diagnosed Plaintiff with organic brain syndrome, organic brain dysfunction, organic affective syndrome, cognitive dysfunction, and substance abuse, and assessed him with a GAF score of 55-60.

13

for semiskilled or skilled work, Dr. Smith found Plaintiff unable to meet competitive standards in every area – understanding, remembering, and carrying out detailed instructions and dealing with the stress of workplace environments. Finally, this neuropsychologist placed Plaintiff's GAF at just 35 and estimated that he would miss in excess of four workdays per month. Tr. 969, 972.

On January 6, 2011, Plaintiff returned to MHCC for medication. Tr. 1047. At this time, he reported leg and foot cramps. And, Plaintiff did not think the Effexor was helping with his depression. The doctor diagnosed him with anxiety and depression. He was advised to discontinue Buspar, and prescribed Vistaril in its place.

On February 3, 2011, Plaintiff was treated at MHCC for high blood pressure. Tr. 1046. He indicated that his last check up had occurred in 2003.

After reviewing the record, we concluded that substantial evidence supports the ALJ's conclusion that Plaintiff maintained the RFC to perform light work involving only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling and no climbing ladders, ropes, or scaffold, performance of overhead work, or work around hazards (including driving as a part of work). Although Plaintiff contends that he could not stand/walk for up to six hours during an 8-hour workday and would require a sit/stand option, we note that he has not been treated for his alleged severe chronic pain since his release from prison. And, as previously noted, he reported taking over-the-counter medications to treat his pain. We also note Dr. Brownfield's diagnosis of only moderate osteoarthritis of the lumbar spine and moderate degenerative disk disease of the neck. Further, we note that Dr. Brownfield placed no restrictions on Plaintiff's ability to walk and stand, and made no notations regarding a need for

a sit/stand option. Similarly, no such limitations were noted by the doctor/doctors treating Plaintiff at MHCC. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).

Likewise, we note that Plaintiff failed to seek out professional mental health after his release from prison. He did consult with a doctor at MHCC and received prescription medications for depression and anxiety. And, while Dr. Bunting opined that Plaintiff had "some" ability to deal with co-workers and supervisors and "little" ability to deal with the public and work stress or changes, she also indicated this could improve as he readjusted to life in the civilian population.

We are cognizant of Dr. Smith's RFC assessment, but conclude that the ALJ was correct in his finding that it was not entitled to substantial weight. A review of the record reveals that Dr. Smith's assessment is not supported by the overall record. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in case record). Accordingly, we conclude there is substantial evidence to indicate that Plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote with few variables and use of little judgment, and the supervision required was simple, direct, and concrete.

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of July 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE